## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Luis Patino, Individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | JUDGE SAND |
| v. ) ) | Civil Action No. 06 CV 4879 |
| FOOT LOCKER RETIREMENT PLAN, FOOT LOCKER, INC. RETIREMENT PLAN COMMITTEE, ) ) ) | CLASS ACTION |
| Defendants. ) ) ) | JURY TRIAL REQUESTED |

RECEIVED JUN 2 3 2006
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff Luis Patino ("Plaintiff"), a participant in the "Foot Locker Retirement Plan" (the "Plan"), on behalf of himself and a class of all others similarly situated, alleges as follows:

### INTRODUCTION

1.     This is a class action brought pursuant to § 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, on behalf of the participants in and beneficiaries of the Plan, a defined benefit pension plan established and sponsored by Foot Locker, Inc. ("Foot Locker" or the "Company").

2.     This action is brought on behalf of Plaintiff and all individuals who participated in the Plan at any time on or after January 1, 1996 (the "Class Period") whose retirement benefits have been converted to and/or calculated according to the Plan's "cash balance" formula. Effective January 1, 1996, the Plan was amended to provide for a "cash balance" formula for the calculation of pension benefits.  Generally, Plaintiff alleges that the terms of the amended Plan violated ERISA in at least the following manner: (1) the Plan violated ERISA's prohibition on reducing rates of benefit accrual due to the increasing age of a plan participant, ERISA §

1

204(b)(1)(H)(i), 29 U.S.C. § 1054(b)(1)(H)(i); and (2) the Plan failed to comply with any of the rules set forth in ERISA § 204(b)(1)(A)-(C), 29 U.S.C. § 1054(b)(1)(A)-(C).

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331(a) and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

4.     Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan was administered in this district, some or all of the fiduciary breaches for which relief is sought occurred in this district, and/or some Defendants reside or maintain their primary place of business in this district.

## PARTIES

### Plaintiff

5.     Plaintiff Luis Patino is a citizen of the United States who resides in El Cajon, California.  He was employed with the Company from 1995 until 2000 as a general manager. Plaintiff Patino is a "participant" in the Plan, within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).

### Defendants

### Foot Locker Retirement Plan

6.     Defendant Foot Locker Retirement Plan is an "employee pension benefit plan," as defined in ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A).  Specifically, the Plan is a "defined benefit plan" within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35).  The Plan is administered from Foot Locker's corporate headquarters, located at 112 W. 34th Street, New York, NY.

**Plan Administrator**

7. According to the Plan's 2004 Form 5500 submission to the Internal Revenue Service and Department of Labor ("2004 Form 5500), the Plan is administered through the Defendant Foot Locker, Inc. Retirement Plan Committee ("Retirement Plan Committee"). The Retirement Plan Committee (or such other person, persons or entity appointed by the Company to administer the Plan) is the Plan "administrator" pursuant to ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A) and a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in that it has discretionary authority and control regarding the administration and management of the Plan and/or the Plan's assets.

## CLASS ACTION ALLEGATIONS

8. Plaintiff brings this action as a class action pursuant to Rules 23(a), (b)(1) and/or (b)(2) of the Federal Rules of Civil Procedure on behalf of himself and the following class of persons similarly situated (the "Class"):

> All individuals, whether active, inactive or retired, their beneficiaries and estates, who have participated in the Foot Locker Retirement Plan at any time on or after January 1, 1996 (the "Class Period") whose accrued or pension benefits are or were based, in whole or in part, on the Plan's cash balance formula.

9. The members of the Class are so numerous and geographically dispersed that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believe there are, at a minimum, over 35,000 members of the Class who participated in, or were beneficiaries of, the Plan during the Class Period.[1]

---

[1] *See* the 2004 Form 5500, which indicated that, as of December 31, 2004, the Plan had 37,915 participants.

10.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the benefits earned by the Plan participants have been calculated correctly as required by ERISA;

(b)     whether the benefits provided under the terms of the Plan accrue at a rate which is reduced because of age;

(c)     whether the Plan complied with any of the rules set forth in ERISA § 204(b)(1)(A)-(C), 29 U.S.C. § 1054(b)(1)(A)-(C);

(d)     what remedies are needed to bring the Plan into compliance with the dictates of ERISA;

(e)     whether the Class is entitled to a clarification of future benefits pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B);

(f)     whether the Class is entitled to an injunction pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3); and

(g)     whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

11.     Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and the other members of the Class each sustained damages and/or were negatively affected by Defendants' wrongful conduct in violation of federal law as complained of herein.

12.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel highly competent and experienced in class action and complex

litigation, including actions involving ERISA employee pension plans. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

13.     Class action status in this ERISA action is warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede their ability to protect their interests.

14.     Class action status is also warranted under the other subsections of Rule 23(b) because: (i) prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants and/or (ii) Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

## **FACTUAL ALLEGATIONS**

15.     Foot Locker specializes in the retail sale of athletic footwear and apparel. Through its subsidiaries, the Company operates in two segments: (a) athletic stores, including Foot Action, Champs Sports, Foot Locker, Lady Foot Locker and Kids' Foot Locker; and (b) direct-to-customer sales through catalogs and internet websites, including Footlocker.com and Eastbay.

16.     The Company has over 44,000 employees and operates over 3800 retail stores in the United States and abroad. See 2005 Foot Locker, Inc. Form 10-K annual report submission to the Securities and Exchange Commission, available at http://www.sec.gov.

17.     The Plan covers eligible employees of Foot Locker and its participating United States subsidiaries.  Eligible employees include those who are at least 21 years of age and have completed one year of service.

18.     Prior to January 1, 1996 (the "Conversion Date"), the Plan provided retirement benefits based upon a traditional "defined benefit" career average pay formula (the "Prior Formula").  Effective as of the Conversion Date, the Plan, then known as the Venator Group Retirement Plan,[2] was amended to implement a "cash balance" formula for determining pension benefits.

19.     A "cash balance" plan resembles certain features of a defined contribution plan. Each participant has an individual hypothetical account that receives hypothetical periodic allocations in the form of: (a) "Pay Credits" based upon a percentage of eligible compensation ("Applicable Percentage"); and "Interest Credits," based upon a percentage of the participant's account balance.

20.     Pay Credits are generally either a flat percentage or weighted according to a participants age and/or service.  Interest Credits are based upon either a flat interest rate or a variable interest rate tied to an outside index.  Generally, Pay Credits are provided only through termination of employment.  Interest Credits are usually provided through benefit distribution— *i.e.*, not conditioned upon future employment.

21.     Unlike a defined contribution plan, no actual plan assets are allocated on account of an individual participant.  Rather, allocations are hypothetical bookkeeping entries maintained by the plan administrator for recordkeeping purposes.

---

[2] Prior to November 2001, Foot Locker was known as Venator Group, Inc.  Venator Group, Inc. was previously known as Woolworth Corporation.

22.     Under the Foot Locker Plan, Pay Credits are based upon a participant's years of service as of the first day of the Plan year and are allocated according to the following Applicable Percentage schedule:

| Years of Service | Percent of all W-2 Compensation | Percent of W-2 Compensation over $22,000 |
|---|---|---|
| Less than 6 | 1.10 | 0.55 |
| 6-10 | 1.50 | 0.75 |
| 11-15 | 2.00 | 1.00 |
| 16-20 | 2.70 | 1.35 |
| 21-25 | 3.70 | 1.85 |
| 26-30 | 4.90 | 2.45 |
| 31-35 | 6.60 | 3.30 |
| More than 35 | 8.90 | 4.45 |

23.     Interest Credits are allocated annually at the fixed rate of six percent.

24.     Employees who were participants in the Plan before and after the Conversion Date ("Heritage Participants") received opening account balances as of the Conversion Date based upon a determination of the actuarial equivalent lump sum value of their accrued benefits under the Prior Formula.  Opening account balances were calculated using an assumed interest rate of 9.0% and the 1983 Group Annuity Mortality tables.  Participants who joined the Plan on or after the Conversion Date had opening account balances of zero.

25.     Normal retirement age under the Plan is age 65.

26.     The normal method of payment is in the form of an annuity; optional forms of payment include a lump sum distribution equal to the greater of: (a) the participant's cash

7

balance account; or (b) the actuarial equivalent of the participant's accrued benefit, determined in accordance with actuarial assumptions set forth in the Plan.

27.    For Heritage Participants, the Plan provided that the lump sum benefit would be no less than the present value of the participant's December 31, 1995 accrued benefit.  In other words, participants receive the greater of: (a) their benefits as calculated under the Plan's cash balance formula; or (b) the actuarial equivalent of their accrued benefit determined under the prior, pre-conversion formula, calculated as if they terminated employment on December 31, 1995 (the "Frozen Benefit").

28.    Under this design feature, certain Heritage Participants actually accrued no new benefits unless and until their cash balance accounts caught up to and exceeded their Frozen Benefits.  In short, this Plan component actually provided that a Heritage Participant's Frozen Benefit would act as an offset against the receipt of any additional benefits.

29.    As noted above, although the Plan provides for a hypothetical individual account for each participant, it is not a "defined contribution plan," as that term is defined in ERISA Section 3(34), 29 USC § 1002(34).  Rather, the Plan is a "defined benefit plan," as defined in ERISA Section 3(35), 29 USC § 1002(35), and, regardless of its "look and feel," must comply with all rules and regulations pertaining to such plans.

30.    Lastly, Plaintiff has not filed a claim for benefits under the Plan's claims procedures because he seeks relief from violations of ERISA statutory provisions which do not require the exercise of discretion by a Plan fiduciary.  In addition, Plaintiff has not attempted to exhaust his administrative remedies because to do so would be futile, as the issues involved in this action are only issues of law.

## COUNT I

### Reduced Rate of Benefit Accrual on Account of Age

### (For Violation of ERISA § 204(b)(1)(H)(i), 29 U.S.C. § 1054(b)(1)(H)(i))

31.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

32.     In accordance with ERISA, a defined benefit plan participant's accrued benefit is not measured by the balance of his/her account.  Rather, ERISA defines a participant's accrued benefit under a defined benefit plan in the form of an annual benefit commencing at normal retirement age.  ERISA § 3(23)(A), 29 U.S.C. § 1002(23)(A).

33.     Pursuant to ERISA § 204(b)(1)(H)(i), 29 U.S.C. § 1054(b)(1)(H)(i), the *rate of accrual* of a defined benefit under a plan may not be reduced because of the attainment of any age by a plan participant.

34.     Interest Credits projected through normal retirement age are a part of each participant's annual benefit accrual.  As such, they must be: (a) valued as an annual benefit commencing at normal retirement age; and (b) taken into account in determining whether the Plan satisfies ERISA's benefit accrual requirements set forth in ERISA § 204(b)(1), 29 U.S.C. § 1054(b)(1).

35.     Under terms of the Plan's cash balance formula, participants' rates of benefit accrual are reduced with increasing age.

36.     As benefits are expressed as annual benefits commencing at normal retirement age, the pattern is clear.  Under the terms of the Plan, the rate of benefit accrual under the Cash Balance Formula is reduced with age because, among other reasons, evaluated as comparative annuity values at normal retirement age, the annual benefit to a worker for one year of service

will generally accrue at a lower rate going forward than that of the same, otherwise similarly situated worker, at a younger age.    Thus, as each participant ages, the value of the accrued benefit attributable to Interest Credits decreases.

37.    Generally, under the terms of the Plan, Pay and Interest Credits accrued in any particular year are more valuable to a younger participant than to an otherwise similarly situated older participant.    Accordingly, the rate of benefit accrual decreases as participants approach retirement age.

38.    Accordingly, the Plan violates ERISA § 204(b)(1)(H)(i), 29 U.S.C. § 1054(b)(1)(H)(i) by reducing the rate of benefit accrual of participants because of advancing age.

39.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff and the Class are entitled to an order enjoining the Plan from continuing to violate the foregoing provision of ERISA and to determine and recalculate their benefits in a manner which is consistent with such provision, as well as other appropriate equitable relief.

## COUNT II

**Conversion to Cash Balance Formula Violated ERISA's Anti-backloading Rules**

**(For Violation of ERISA § 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B))**

40.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

41.    Under ERISA, a defined benefit plan's benefits must accrue in accordance with one of three alternative accrual rules in ERISA § 204(b)(1)(A)-(C), 29 U.S.C. § 1054(b)(1)(A)-(C), commonly known as the three percent rule, the 133 1/3% rule and the fractional rule, designed to support ERISA's early vesting requirements.

42.     Cash balance plans generally cannot satisfy the fractional rule or the three percent rule.

43.     Accordingly, the Plan must satisfy this requirement by complying with the 133 1/3% rule of ERISA § 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B), which provides, in pertinent part, that "a defined benefit plan satisfies the requirements of this paragraph for a particular plan year if under the plan . . .the annual rate at which any individual who is or could be a participant can accrue the retirement benefits payable at normal retirement age under the plan for any later plan year is not more than 133 1/3% of the annual rate at which he can accrue benefits for any plan year beginning on or after such particular plan year and before such later plan year."

44.     Under the terms of the Plan, certain Heritage Participants experienced periods of zero benefit accrual following the Conversion Date.  This effect, known as "wear-away," primarily affects older workers, who generally have greater Frozen Benefits than younger workers.[3]  The Plan effectively provided that Heritage Participants whose Frozen Benefits exceeded their opening account balances would accrue no new retirement benefits unless and until their cash balance accounts caught up to and exceeded their Frozen Benefits.

45.     Thus, the Plan violated the 133 1/3% rule with respect to any participant who earns a benefit following one or more years of zero benefit accrual.

46.     Accordingly, the Plan violated the accrual rules of ERISA by failing to comply with any of the rules set forth in § 204(b)(1)(A)-(C), 29 U.S.C. § 1054(b)(1)(A)-(C),  and Plaintiff and the Class are entitled to appropriate relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including relief ordering Defendants to amend the Plan retroactively to ensure

---

[3] *See* Edward A. Zelinsky, "The Cash Balance Controversy," <u>19 Va. Tax Rev. 683</u> (2000).

compliance with the rule set forth in ERISA § 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B) and to

determine and recalculate their benefits accordingly, as well as other appropriate relief.

## COUNT III

**Plan Formula Violates ERISA's Anti-backloading Rules**

**(For Violation of ERISA § 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B))**

47.    Plaintiff incorporates the allegations contained in the previous paragraphs of this

Complaint as if fully set forth herein.

48.    Under ERISA, a defined benefit plan's benefits must accrue in accordance with

one of three alternative accrual rules in ERISA § 204(b)(1)(A)-(C), 29 U.S.C. § 1054(b)(1)(A)-

(C), commonly known as the three percent rule, the 133 1/3% rule and the fractional rule,

designed to support ERISA's early vesting requirements.

49.    The Plan must satisfy this requirement by complying with the 133 1/3% rule of

ERISA § 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B), which provides, in pertinent part, that "a

defined benefit plan satisfies the requirements of this paragraph for a particular plan year if under

the plan  . . .the annual rate at which any individual who is or could be a participant can accrue

the retirement benefits payable at normal retirement age under the plan for any later plan year is

not more than 133 1/3% of the annual rate at which he can accrue benefits for any plan year

beginning on or after such particular plan year and before such later plan year."

50.    Due to the large difference between the lowest and highest Applicable

Percentages for pay credits, together with the Plan's rate for Interest Credits, the Plan fails to

ensure compliance with the 133 1/3% rule.

51.    Accordingly, the Plan violates the accrual rules of ERISA by failing to comply

with any of the rules set forth in § 204(b)(1)(A)-(C), 29 U.S.C. § 1054(b)(1)(A)-(C),   and

Plaintiff is entitled to appropriate relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including relief ordering Defendants to amend the Plan retroactively to ensure compliance with the rule set forth in ERISA § 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B) and to determine and recalculate their benefits accordingly, as well as other appropriate relief

## COUNT IV

**Failure to Provide Adequate Summary Plan Descriptions**

**(For Violation of ERISA § 102, 29 U.S.C. § 1022)**

52.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

53.     ERISA § 102, 29 U.S.C. § 1022 requires a plan administrator to provide a summary of any material modification in the terms of the plan...written in a manner calculated to be understood by the average plan participant..."

54.     The implementation of the cash balance formula and the reduced rate of benefit accrual with increasing age constituted a material modification in the terms of the plan, as described in ERISA § 102, 29 U.S.C. 1022.

55.     The summary plan descriptions provided failed to adequately describe, in a manner calculated to be understood by the average Plan participant, the full effects of the cash balance formula, including explanations of the reduction in the rate of benefit accrual with increasing age.

56.     Plaintiff and the Class were prejudiced by Defendants' failure to provide an adequate summary plan description.  Plaintiff and the Class were led to believe that the Plan complied with ERISA and did not impermissibly provide for a reduced rate of benefit accrual due to increasing age.  Defendants' failure to provide adequate summary plan descriptions led

Plaintiff and the Class to believe that the reduction in the rate of benefit accrual with increasing age and the problems associated with the wearaway effect were not components of the Plan.

57.     Accordingly, Defendants violated the provisions of ERISA § 102, 29 U.S.C. § 1022.

58.     Therefore, Plaintiff and the Class are entitled to appropriate relief under ERISA 502(a)(3), 29 U.S.C. § 1132(a)(3).

## COUNT V

**Failure to Provide Notice of Significant Reduction in the Rate of Benefit Accrual**

**(For Violation of ERISA § 204(h), 29 U.S.C. § 1054(h))**

59.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

60.     At the time of the implementation of the cash balance formula, ERISA § 204(h), 29 U.S.C. § 1054(h) provided that a defined benefit plan may not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless the plan administrator provides a written notice setting forth the plan amendment and its effective date to each plan participant.   Such notice was required to have been given after the adoption of the plan amendment and not less than 15 days before the effective date of the amendment.

61.     The implementation of the cash balance formula constituted a plan amendment providing for significant reductions in the rate of future benefit accrual.

62.     Upon information and belief, Defendants violated ERISA § 204(h), 29 U.S.C. § 1054(h) by failing to provide the requisite notice of the significant reduction in the rate of future benefit accrual in accordance therewith.

63.     Plaintiff and the Class were prejudiced by Defendants' failure to provide notice of the significant reduction in the future rate of benefit accrual in accordance with the requirements of ERISA § 204(h), 29 U.S.C. § 1054(h).  Such failure led Plaintiff and the Class to believe that the Plan complied with ERISA's requirements and did not impermissibly provide for a reduced rate of benefit accrual due to increasing age.  Heritage Participants were not provided notice of the fact that they may suffer periods of zero benefit accrual.  Defendants' failure to provide the requisite notice in accordance with ERISA § 204(h), 29 U.S.C. § 1054(h) led Plaintiff and the Class to believe that the Plan's impermissible terms were not a components of the Plan.

## COUNT VI

64.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

65.     Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(l)(B), Plaintiff and the Class are entitled to a judgment clarifying their right to receive future benefits from the Plan, calculated under the terms of the Plan, to the extent those terms are not inconsistent with the applicable provisions of ERISA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

A.     Certification of this action as a class action pursuant to Fed. R. Civ. P. 23 with the Class defined as aforesaid and Plaintiff as a proper Class representative;

B.     Judgment for Plaintiff and the Class against defendants on all claims asserted herein including an amount of money sufficient to satisfy their claims;

C.     A declaration that the Plan violates ERISA in the manner alleged herein;

D.     An order providing such relief as the Court finds appropriate under ERISA § 502(a)(1)(B) and/or § 502(a)(3).

Such relief includes, without limitation:

E.    An order (a) enjoining Defendants from continued enforcement of the Plan's unlawful provisions described above; (b) reforming the Plan to ensure compliance with ERISA §§ 204(b)(1)(B) and 204(b)(1)(H); and (c) compelling the recalculation of the accrued benefits of Plaintiff and the Class under the terms of the Plan as reformed in compliance with ERISA's requirements.

F.    Pre-and post-judgment interest;

G.    Attorneys' fees and costs pursuant to the common fund/benefit doctrine or any other applicable law; and

H.    Any other and further relief as the Court deems appropriate under the circumstances.

Dated: New York, New York       Respectfully submitted,
       June 23, 2006

                                **LAW OFFICES OF CURTIS V. TRINKO, LLP**

                                By: _Curtis V. Trinko_
                                Curtis V. Trinko (CT-1838)
                                Wai Kin Chan (WC-0743)
                                16 West 46th Street, 7th Floor
                                New York, New York 10036
                                Tel: (212) 490-9550
                                Fax: (212) 986-0158

                                **SCHIFFRIN & BARROWAY, LLP**
                                Richard S. Schiffrin, Esq.
                                Joseph H. Meltzer, Esq.
                                Edward W. Ciolko, Esq.
                                Joseph A. Weeden, Esq.
                                280 King of Prussia Road
                                Radnor, Pennsylvania 19087
                                Telephone: (610) 667-7706
                                Facsimile: (610) 667-7056

                                **Attorneys for Plaintiff**

16